IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

**UNITED STATES**                                                                   **PLAINTIFF/RESPONDENT**

V.                             No.  6:10-CR-60030
                               No.  6:13-CV-06056

**BONNIE LYNN MOORE**                                                        **DEFENDANT/PETITIONER**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. Section 2255 (ECF No. 68) filed May 24, 2013.  The United States of America filed a Response (ECF No. 74) on August 26, 2013.  The Petitioner has not filed a Reply and the matter is ready for Report and Recommendation.

### I.  Background

On August 3, 2010, a two-count Criminal Complaint was filed against Phillip Stephen Medley and Bonnie Lynn Moore. (Doc. 1). Count One alleged on or about June and July 2010 Phillip Stephen Medley and Bonnie Lynn Moore ("Moore") violated 18 U.S.C. § 2251(a) and (e) and 2, an offense described as production of child pornography using materials that had moved in interstate commerce. The Complaint was accompanied with an Affidavit of Mark A. Jessie, Federal Bureau of Investigation Special Agent of the Little Rock Division, Hot Springs Resident Agency.

On August 25, 2010, Moore was accompanied by attorney Morse Gist for her initial appearance before the Honorable Barry A. Bryant. Moore waived the issues of probable cause and detention. (Doc. 11). She was ordered detained and remanded to custody. (Doc. 13). Mr. Gist was appointed as Moore's counsel. (Doc. 15).

On August 30, 2010, Moore filed an Unopposed Motion for Determination of Mental Competence (1) to Stand Trial and (2) Competence at the Time of the Alleged Offense ("Motion for Psychiatric Exam"). (Doc. 14). The Court granted Moore's Motion for Psychiatric Exam on September 2, 2010. (Doc. 16).

On September 15, 2010, Moore was named in Count One of a four-count Indictment filed in the United States District Court for the Western District of Arkansas. (Doc. 20). Count One charged Moore with aiding and abetting Phillip Stephen Moore in using, persuading, and enticing a minor child to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct with materials that have been mailed, shipped or transported in interstate commerce, in violation of 18 U.S.C. §§ 2251(a) and (e) and 2.

On November 5, 2010, the Court received Moore's Psychiatric Exam. (Doc. 31). Thereafter, Moore appeared with counsel on November 17, 2010, and was arraigned by arraigned by the Honorable Barry A. Bryant. Moore entered a not guilty plea. (Doc. 32). A jury trial was set for February 8, 2011. (Doc. 33).

On February 2, 2011, Moore appeared with counsel before the Honorable Robert T. Dawson for a change of plea hearing. (Doc. 40). A written plea agreement was presented to the Court which set forth that Moore would agree to plead guilty to Count One of the Indictment that charged her with aiding and abetting the production of a visual depiction of child pornography using materials transported in interstate and foreign commerce. (Doc. 42). The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR").

On March 30, 2011, Moore, through counsel, filed a Pre-Sentence Memorandum requesting a sentence of 180 months imprisonment, the mandatory minimum. (Doc. 43). The United States filed its response on June 2, 2011, and opposed Moore's request. (Doc. 44).

On April 12, 2011, the Probation Office issued Moore's initial PSR. Neither Moore nor the United States had any objections and the Probation Office issued a revised PSR with an Addendum on May 18, 2011. The PSR assessed a base offense level of 32 pursuant to U.S.S.G. § 2G2.1(a). (PSR, ¶ 15). Moore received a six level increase based on specific offense characteristics pursuant to U.S.S.G. §§ 2G2.1(b)(1), (2), & (5). (PSR, ¶¶ 16 -18). This resulted in an adjusted offense level of 38. (PSR, ¶ 22). Moore received a 3-point reduction for acceptance of responsibility (PSR, ¶¶ 23 & 24) resulting in a total offense level of 35 (PSR, ¶ 25). Moore was assessed criminal history category I. (PSR, ¶ 29). The resulting advisory Guidelines range was 168 - 210 months; however, because of the statutory minimum term of 180 months, the Guidelines range was 180 - 210 months imprisonment. (PSR. ¶ 41).

On June 6, 2011, Moore appeared for sentencing. (Doc. 45). Before passing sentence, the Court inquired whether Moore was satisfied with her counsel, gave her an opportunity to make a statement and present information in mitigation of her sentence. (Id.). The Court then proceeded to sentence Moore to a bottom-of-the-Guidelines-range sentence of 180 months imprisonment, imposed lifetime supervised release and a fine of $1,000 and ordered her to pay the $100 special assessment. (Doc. 46). Moore did not appeal her conviction nor sentence.

On May 24, 2013, Moore filed the instant pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the § 2255 Motion). (Doc. 68).

## II. Discussion

The court first looks at the timeliness of the Defendant's Petition.

**A. Limitations:**

A one-year period of limitation applies to motions under 28 U.S.C. § 2255. This period

runs from the latest of: "(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255.

In this case the limitations runs from the time the judgment became final.  Judgment was entered on June 6, 2011 (ECF No. 46) and the Plaintiff did not appeal.  Under 2255 where a Petitioner does not file a direct appeal, her conviction became final when the fourteen-day period for filing a notice of appeal expired. *See Never Misses A Shot v. United States*, 413 F.3d 781, 782 (8th Cir.2005); *Fed. R.App. P*. 4(b)(1)(A) (setting a 14-day time limit for filing a notice of appeal in a criminal case).  The Judgment, therefore, became final on June 20, 2011 and the time for filing a habeas action expired on June 20, 2012.  The Defendant did not file her petition until May 24, 2013 and is therefor barred by the limitations period unless equitable tolling is applicable.

  1.  **Equitable Tolling**

A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

  a.  **Cause for Default:**

A prisoner whose petition is belatedly filed may take advantage of equitable tolling where extraordinary circumstances beyond his control make it impossible for him to file a petition on time or when the action of the respondent lulled him into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8thCir. 2001). In general, neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177F.3d 390, 392 (5th Cir. 1999). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000, cert. denied, 534 U.S. 863 (2001) (equitable tolling not warranted in case of unrepresented prisoner alleging lack of legal knowledge or legal resources).

In her 2255 Motion the Defendant argues that her timeless should be excused because:

> "I have tried to get help.  My counselor here can not help me.  I am in GED and considered "literacy Impaired."  I have been in stress and trauma class and have been on suicide watch.  All of this is because I cannot help myself.  I even have another inmate helping me.  I can't read or write so well.  I wrote another lawyer an his office said he died.  I do not know how to get another attorney.  Judges are lawyers so I wrote him." ECF No. 68, p. 12.

The Defendant has asserted only an "unfamiliarity" of the legal system and her failure to obtain representation.  She has not set forth any justifiable cause for excusing her default.  In the alternative she has asserted a purported innocence claim.

**b.  Actual Innocence**

The Petitioner has asserted an actual innocence claim by claiming she was coerced into the criminal act by her co-defendant. (ECF No. 68, p. 4).  An actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quotation omitted). To establish a valid claim

of actual innocence, Petitioner must "support his allegations of constitutional error with new reliable evidence ... that was not presented at trial," and demonstrate "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 324, 327, 115 S.Ct. 851. This standard is strict; a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction. *See Johnson v. United States*, 278 F.3d 839, 844 (8th Cir.2002) (*quoting McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir.2001)).

In the sentencing memorandum prepared by the Defendant's attorney he places the court on notice that the Defendant was a "slow learner" in school (ECF No. 43, p. 1), that she met her co-defendant husband about one week prior to their marriage, and that he had "a history of sexually abusing young females" and "drew Bonnie into his activities." That the Defendant had no criminal history but that she "succumbed to Phillips demands and joined in his aberrant behaviors." (Id., p. 2).  A psychological evaluation conducted in September 2010 noted that the Defendant's "Cognitive Functions was remarkably low, with her Full Scale IQ of 72 falling within the Borderline range of overall intelligence." (Id.).  Nevertheless, the doctor found the Defendant did not have any diagnosable mental illness at the time of the offense and was fit to proceed to trial. (Id.).  The Defendant's attorney argued to the court that the "combination of Phillip Medley's force of will and Bonnie's weak intellectual ability led to Bonnie's involvement in behavior that was completely inconsistent with how she had always behaved previously. It is unlikely that had Bonnie not met and married Phillip Medley, that she would have ever become involved in this type of behavior." (Id., p. 4).

The Government, in its response to the Defendant's Sentencing Memo, argued that the Defendant appeared to be a "willing participant" in the videotape and there was no verbal or physical threats uttered by the co-defendant during the tape. (ECF No. 44, p. 2). It is also noted

that the Defendant did not raise coercion during her arrest (ECF No. 1) or during her psychological evaluation. Clearly the Defendant's allegation of coercion was evidence that was known to her prior to her plea.

The sort of evidence that cannot be used for a Schlup gateway claim includes "evidence [that] could have been discovered earlier in the exercise of due diligence." *Cornell v. Nix*, 976 F.2d 376, 380 (8th Cir.1992) (en banc); *accord Meadows v. Delo*, 99 F.3d 280, 282 (8th Cir.1996). The Schlup standard is quite high; the petitioner must come forward with new reliable evidence that was not available at trial, id., and she must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851 (*adopting the Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397.

The police had video and audio of the sexual encounter between the Defendant and the victim. There is no evidence of the type of coercion that would have justified a defense of coercion existed, but, regardless, it was a fact known prior to the Defendant's plea. The Defendant's post plea claim of coercion is not sufficient to toll the running of the limitations period. Even, however, if the Defendant's Petition had been timely filed it is without merit.

## B.  Ineffective Assistance of Counsel

The Defendant argues that she received ineffective assistance of counsel at sentencing (ECF No. 68, p. 4), and that her attorney informed her she "could not appeal." (Id., p. 7).

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing

*McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); 2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the

reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

**1. Sentencing**

The Defendant argues that she was "forced to cooperate with my husband. He told me if I did not, he would kill the child" and that she was "not given the chance to say this at my hearing" and she did not think her attorney "impressed this enough to the judge." (ECF No. 68, p. 4).

The Defendant agreed to enter a plea of guilty to Count I of the indictment which charged her with aiding and abetting the production of child pornography (ECF No. 42, ¶1), which carried a maximum term of imprisonment for 30 years and a mandatory minimum term of imprisonment for 15 years. (Id., ¶14). In consideration of the plea the government dismissed the remaining counts and agreed that the defendant would receive the three-level adjustment for acceptance of responsibility. (Id., ¶1). To the extent that Petitioner's claims arise out the plea process, she must show a reasonable probability that, but for counsel's errors, she would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997). The Defendant has not asserted that she would have insisted on going to trial only that the court was not aware of all of the sentencing factors.

As noted above the Defendant's attorney argued at sentencing that the Defendant had no criminal history, diminished mental capacity and that her co-defendant "was a more forceful personality, she succumbed to his will" (ECF No. 43, p. 4) but, in his argument, he acknowledges that she "knew what she was doing was wrong." (Id.). This is the same acknowledgment that the Defendant made during her psychological evaluation. (ECF No. 31). Also, as noted previously, she made no reference to the fact that her culpability was occasioned by a threat of death to the minor victim.

The Government argued that "Based on the seriousness of the offense committed by this Defendant whose voluntary conduct is visible in a video that records her actions, the government strongly opposes the Defendant's request this Court fashion a sentence that factors "Phillip Medley's force of will" as grounds for imposing a mandatory minimum sentence. (ECF No. 44, p. 3).

The court evidently considered the Defense argument and sentenced the Defendant to the statutory mandatory minimum that she could receive of 180 months. (ECF No. 46, p. 2). The Defendant's co-defendant was sentenced to twenty-five (25) years on Count I and twenty (20) years on Count II to run concurrently. (ECF No. 53, p. 2). It is difficult to see how the Defendant's attorney has been ineffective when he secures the mandatory minimum sentence on his client's behalf.

To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different...a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (internal quotations omitted) Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of

the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir. 2007)(citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004)) Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not ... need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 *894 F.3d 616, 620 (8th Cir.1999).

The Petitioner has failed to establish prejudice or that she would have rejected the plea offer and proceed to trial.

### 2. Appeal

The Defendant also contends that her attorney was ineffective because "my attorney told me I could not appeal or I would probably get a longer sentence." (ECF No. 68, p. 7).

An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to § 2255 relief. *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000) Where the defendant expressly requests that his counsel file an appeal and counsel fails to do so, thereby depriving the defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal. See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007)

For such a claim to succeed, however, the client must show that he instructed his counsel to file an appeal. See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007).   A bare assertion by the petitioner that he made such a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition. Id. Moreover,

"ineffective assistance of counsel cannot be presumed from the failure to advise that an appeal be taken ..." *United States v. Neff*, 525 F.2d 361, 364 (8th Cir. 1975). Where the record indicates that defense counsel did consult with the client about the right to file an appeal, and there is an absence of any evidence in the record to counter defense counsel's testimony that he never received express instructions from the client about an appeal, the client cannot make out an ineffective assistance claim, and cannot show that the district court is required to hold an evidentiary hearing. *United States v. Arvizu*, 270 F.3d 605, 606 (8th Cir. 2001)

While the court does not have a copy of the Sentencing Hearing or any Affidavit from the trial attorney it is the court's practice to advise Defendants of their right to appeal at time of sentencing. The Defendant was also advised of her rights at the time of Arraignment. (ECF No. 32). These admonitions by the court would be in derogation of the Defendant's claim that her attorney told her she could not appeal. There is nothing in the record to indicate that the Defendant gave her attorney express instructions to appeal and the court finds that the Defendant did not expressly instruct her attorney to appeal.

The court finds that even if the Defendant's Petition were timely her claims of ineffective assistance of counsel are without merit.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be **DISMISSED with PREJUDICE**.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo**

**review by the district court.**

  DATED  January 15, 2014.


                */s/ J. Marschewski*
                HONORABLE JAMES R. MARSCHEWSKI
                CHIEF UNITED STATES MAGISTRATE JUDGE